J-S43040-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARIKA BRINSON | : | |
| | : | |
| Appellant | : | No. 2120 EDA 2021 |

Appeal from the Judgment of Sentence Entered July 9, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003403-2018

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| CHARIKA BRINSON | : | |
| | : | |
| Appellant | : | No. 2121 EDA 2021 |

Appeal from the Judgment of Sentence Entered July 9, 2019
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0003404-2018


BEFORE:  DUBOW, J., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.: **FILED APRIL 24, 2023**

Charika Brinson[1] appeals *nunc pro tunc* from the judgments of sentence

imposed following her convictions for two counts each of aggravated assault

---

[1] We note that the names Charika Brinson and Chakira Brinson appear to be used interchangeably both throughout the record and on filings with this Court and the trial court.  Indeed, the trial court acknowledges that Charika Brinson was previously known as Chakira Brinson.  ***See, e.g.***, N.T. Trial, 3/27/19, at
*(Footnote Continued Next Page)*

of a child less than six years of age and endangering the welfare of children (EWOC).[2] Appellant raises claims concerning evidentiary rulings by the trial court, the sufficiency and weight of the evidence, and the discretionary aspects of her sentence. We affirm.

The trial court summarized the underlying facts of this matter as follows:

The underlying charges stemmed from Appellant's arrest following an investigation of the alleged neglect and repeated physical abuse of two female complainants F.B., then age three (3) years and C.B., then age five (5) years between June 2016 through August 2016. The trial evidence established that both victimized children had been entrusted to Appellant's custodial care together into Appellant's residence located at 659 [North] 41st Street, in West Philadelphia by the children's biological mother, [W.B]. Appellant and [W.B.] were distant relatives and close friends. Appellant agreed to supervise and house three of [W.B.'s] children while [W.B.] was serving a six-month period of incarceration starting in June 2016. Appellant initially agreed to also care for [W.B.'s] then thirteen-year old son, N.B. However, this child initially stayed under the care of Appellant's sister Sharee Brinson in a different residence. N.B. left [Sharee] Brinson's care in late July 2016 to reside with his maternal great aunt [D.B.]

The cumulative trial evidence unequivocally proved that from June 2016 through August 2016, Appellant had subjected both small statured girls to abhorrent conditions, by denying them necessities including food, forcing them to sleep on the dirty and cold floor, and regularly beating both children with various objects including belts, brushes, and shoes. Their older brother N.B. had been prevented from visiting his sisters until early August 2016. He then noticed that both girls had appeared visibly skinnier and covered in bug bites and unusual marks. N.B. reported his fears for them and described their poor appearance to his aunt [D.B.] Upon learning of the girls' maltreatment, [D.B.] began valiant

_____

6; N.T. Sentencing Hr'g at 5. For our purposes, the captions reflect the name that was used on both Appellant's notice of appeal and docketing statement.

[2] 18 Pa.C.S. §§ 2702(a)(8) and 4304(a)(1), respectively.

efforts to retrieve her nieces along with F.B.'s biological father and C.B.'s stepfather, [E.A.]

Reuniting these girls with their family had proved to be most difficult; Appellant began a campaign to keep C.B. and F.B. away from their family's view. Appellant constantly moved both girls and provided their family members with deliberately false information about their location. After an extensive search and the intervention of third parties, both traumatized children were finally reunited together with [D.B.] and [E.A.] in late August 2016.

Immediately upon recovering these two emaciated children, [D.B.] and [E.A.] were alarmed by both children's poor physical condition and drastically negative changes in personalities. They testified that before June 2016 both young girls had been happy-go-lucky, bright, and hopeful. After their stay with Appellant, both sisters had been unusually quiet, withdrawn, and skittish. [D.B.] and [E.A.] promptly took both girls to Children's Hospital of Philadelphia (hereinafter "CHOP"), for emergency treatment.

At CHOP, emergency medical examinations of [the children's] bodies displayed multiple abuse sourced traumatic bruising including linear and belt buckle type markings. Each child also presented [with] additional physical conditions consistent with significant neglect including, malnourishment, ringworm infection, and bed bug bites. The swelling on the girls' stomachs had been so profound, the treating physicians had grave concerns that their spleens may have ruptured. Both girls were admitted and treated for at least a week in the hospital.

Shortly after arrival at CHOP, five-year-old C.B. revealed that Appellant had routinely physically beaten and kicked both sisters which had caused their injuries while they were in Appellant's home. Subsequently, CHOP child abuse specialist and expert, Kate Henry, M.D., interviewed C.B. and conducted a physical exam of both girls.[fn1] During her examination of the girls, Dr. Henry observed rectangular discolored marks consistent with the shape of a belt buckle and scarring on the[] inner thighs of both children. At trial, Dr. Henry expertly opined that these were patterned injuries [that] had not been caused accidentally, but rather had been the result of intentional and repeated striking with physical objects like a belt and buckle. Dr. Henry interviewed C.B. who had informed her that Appellant had beaten her multiple times with a belt.

[fn1] Dr. Henry did not interview F.B. due to her age.

Based on her observations and C.B.'s consistent statements, Dr. Henry had determined and diagnosed both girls as having suffered repeated physical abuse with Appellant as the named perpetrator. Dr. Henry reported her expert findings of neglect and physical abuse of both girls by Appellant to the City of Philadelphia Department of Human Services (hereinafter "DHS").

\* \* \*

Following the physician's report to DHS social services agency, the matter was referred to the City of Philadelphia Police Department Special Victims Unit and assigned to investigator Officer Jose [Viera]. While the original DHS report had originally captioned and listed Appellant's sister [Sharee] Brinson as the person to be investigated, Officer [Viera's] investigation quickly identified Appellant as the primary suspect. Officer [Viera] interviewed and obtained signed or videoed statements from both victim children C.B. and F.B., their older brother N.B., father and stepfather [E.A.], and their aunt [D.B.]

During her interview, five-year-old C.B. described Appellant as a "monster" and again affirmed that Appellant forced both sisters to sleep on the floor and would regularly beat them with objects ranging from brooms to belts. Three-year-old F.B. similarly revealed that Appellant had repeatedly hit her with "shoes and a belt."

\* \* \*

Before trial began, Appellant's counsel acknowledged on the record that he had received advance "Notice of Intent to Proceed by Way of the Tender Years Exception to the Hearsay Rule" from the Commonwealth, that had reflected the intention to introduce hearsay evidence in the form of C.B. and F.B.'s descriptions of Appellant's abuse to their [father and] stepfather [E.A.]

Cumulative trial evidence presented by the Commonwealth had included factual testimony elicited from the children's mother, [W.B.], the two victims F.B., C.B., their older brother N.B., their father and stepfather [E.A.], their aunt [D.B.], the investigator Officer [Viera], and expert opinion and factual testimony of Dr. Kate Henry which had been corroborated by the certified medical records. Initially, [W.B.] testified to how she had entrusted Appellant to care for her daughters during her incarceration and

- 4 -

related the hasty arrangements that she had made to enable their stay with her close friend, Appellant.

Prior to testifying, [the trial court] engaged in mirrored dual colloquies with both children victims, F.B. now aged six (6) years and C.B. now aged eight (8) years to confirm their competency to testify. After the initial inquiry and absent any defense objection, [the trial court] found both children competent to testify. Both F.B. and C.B. testified quite convincingly in front of the jury [] that Appellant had forced them to sleep on the floor, had refused to feed them, and regularly beat them and mistreated them severely.

Their older brother, N.B., now aged [fifteen] years, their aunt [D.B.], and their [father and] stepfather [E.A.], credibly and consistently related the sequence of events including their discovery of abuse and the extreme endeavors that they had undertaken to locate and remove the girls from Appellant's clutches. These three witnesses also vividly described the drastic and alarming changes in their physical and mental appearances and conduct of both traumatized children immediately after their rescue. [E.A.] reiterated that[ shortly after their rescue,] both girls fitfully and fearfully confided in him that Appellant had repeatedly hit them.

Dr. Henry provided the jury with thorough and cogent expert testimony that had been soundly based on her physical examinations of F.B. and C.B. and her interview with C.B. She thoroughly explained and described the patterned injuries that unequivocally had showed physical abuse, and C.B.'s statements that Appellant was the source of those injuries. Substantiating medical reports and photos of the injuries taken by doctors and nurses at CHOP were introduced. Officer [Viera ] testified to the course of his investigation, including his interview with F.B. and C.B., where they again repeated the allegations against Appellant.

During trial, [the trial court] sustained relevance and hearsay objections by the Commonwealth's attorney when defense counsel attempted to discuss a DHS report filed against Appellant's sister, [Sharee] Brinson, in his opening statemen[t]. [The trial court] also overruled defense counsel's hearsay objection to [E.A.'s] testimonial recollection of what his daughters had told him about Appellant's physical abuse of them, under the "Tender Years" hearsay exception.

> After hearing all arguments, and discussing all evidence, the jury returned a unanimous verdict of guilty on two counts of each docketed charge related to each child: aggravated assault of a child under [six years of age], graded as a felony of the second degree; and endangering the welfare of children through course of conduct[,] graded as a felony of the third degree.

Trial Court Op., 4/25/22, at 1-7 (citations omitted, some formatting altered).

On July 9, 2019, the trial court imposed an aggregate sentence of three to eleven years' incarceration, to be followed by six years' probation.[3] Appellant filed a post-sentence motion challenging the weight of the evidence and discretionary aspects of her sentence. On February 4, 2020, Appellant's post-sentence motion was denied by operation of law.

_____

[3] Specifically, the trial court imposed a sentence of two to six years' incarceration and four years' probation for each count of aggravated assault. The trial court also sentenced Appellant to one to five years' incarceration and two years' probation for each count of EWOC. The individual sentences at Docket No. 3403-2018 were structured consecutively. The trial court ordered the sentences imposed at Docket No. 3404-2018 to be served concurrent to the sentences imposed at Docket No. 3403-2018. The result was an aggregate sentence of three to eleven years' incarceration followed by six years' probation.

At the time of sentencing, Appellant's prior record score (PRS) was a zero. *See* N.T. Sentencing Hr'g. at 25. The standard minimum guideline range for aggravated assault was six to fourteen months' incarceration, plus or minus six months for aggravating or mitigating factors. The trial court's sentence for aggravated assault fell outside the aggravated range, but did not exceed the statutory maximum for a second-degree felony. The standard minimum guideline range for EWOC was three to twelve months, plus or minus six months for aggravating or mitigating factors. The trial court's sentence for EWOC was within the standard guideline range.

On February 11, 2021, Appellant filed a timely Post Conviction Relief Act[4] (PCRA) petition seeking to reinstate her direct appeal rights *nunc pro tunc*. After the trial court granted Appellant's motion on September 16, 2021, Appellant filed timely notices of appeal and a court-ordered Pa.R.A.P. 1925(b) statement. The trial court issued a Rule 1925(a) opinion addressing Appellant's claims.

Appellant raises the following issues for our review:

1. Did the trial court err in sustaining the Commonwealth's objection on the grounds of relevancy, when defense counsel said during his opening statement that the Department of Human Services initially opened an investigation into Appellant's sister, [Sharee] Brinson, not [Appellant], in violation of Appellant's right to a fair trial and the right to present a complete defense pursuant to the PA Constitution, Article I, § 8 and the United States Constitution, 6th Amendment[?]

2. Did the trial court err in admitting, over defense counsel's objection, inadmissible hearsay, in the form of a prior consistent statement in violation of Pa.R.E. 613 when C.B.'s father testified that "[C.B.] just said that she was beaten and they wouldn't feed them. They made them sleep on the cold floors" to bolster the complainant's credibility after having first accused [A]ppellant's sister of abuse, and which went beyond the scope of notice provided for the Tender Years hearsay exception, in violation of [A]ppellant's right to a fair trial and the right to present a complete defense pursuant to the [Pennsylvania] Constitution, Article I, § 8 and the United States Constitution, 6th Amendment[?]

_____

[4] **See** 42 Pa.C.S. §§ 9541-9546. Because Appellant did not file a notice of appeal after her post-sentence motions were denied by operation of law, her judgment of sentence became final for the purposes of the PCRA on March 5, 2020. **See** 42 Pa.C.S. § 9545(b)(3); Pa.R.A.P. 903(a). Accordingly, Appellant's PCRA petition was timely filed.

3. Did the trial court err in finding that the evidence at trial was sufficient as a matter of law to convict Appellant of the crime of aggravated assault as set forth in 18 Pa.C.S. § 2702(a)(8) and [EWOC] as set forth in 18 Pa.C.S. § 4304(a)(1) when the evidence of record does not establish that Appellant caused or intended to cause bodily injury to [the victims] nor did it establish that Appellant knowingly endangered the welfare of a child by violating a duty of care, protection or support, respectively?

4. Did the trial court err in finding that the greater weight of the evidence established Appellant as the perpetrator beyond a reasonable doubt as to the crimes of aggravated assault and [EWOC] where the Commonwealth did not establish each and every element of the times and did not meet its burden?

5. Did the trial court err in imposing a sentence that was unduly harsh, excessive, inconsistent with the Sentencing Code, contrary to fundamental norms underlying the sentencing process because it did not take into consideration the information contained in the pre-sentence [investigation (PSI)] report, the mental health report, arguments for mitigation, [A]ppellant's lack of any prior criminal background?

Appellant's Brief at 2-3 (formatting altered).

**Evidentiary Issues**

Appellant's first two claims relate to evidentiary rulings made by the trial court.  First, Appellant alleges that the trial court erred when it sustained the Commonwealth's objection during Appellant's opening statement after Appellant referenced a DHS investigative report stating that the initial focus of the investigation was Appellant's sister, Sharee Brinson.  Appellant's Brief at 9.  Appellant argues that "the preclusion of this evidence without any valid justification based on the rules of evidence limited Appellant's ability to mount a full and fair defense."  *Id.* at 14.

We review a trial court's evidentiary rulings using the abuse of discretion standard of review. *Commonwealth v. Luster*, 234 A.3d 836, 838 (Pa. Super. 2020). A finding of abuse of discretion "may not be made merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous." *Commonwealth v. Saez*, 225 A.3d 169, 178 (Pa. Super. 2019) (citation omitted).

With respect to opening statements, our Supreme Court has explained:

> "The purpose of an opening statement is to apprise the jury how the case will develop, its background and what will be attempted to be proved; but it is not evidence." *Commonwealth v. Montgomery*, 626 A.2d 109, 113 (Pa. 1993). In *Montgomery*, we acknowledged that "as a practical matter the opening statement can often times be the most critical stage of the trial, because here the jury forms its first and often lasting impression of the case." [*Id.* at 113]. The prosecution, as well as the defense, is afforded reasonable latitude in presenting opening arguments to the jury. Such latitude is not without limits.

*Commonwealth v. Parker*, 919 A.2d 943, 950 (Pa. 2007) (some citations omitted, formatting altered). Importantly, as noted by the *Parker* Court, opening statements are not evidence. *Id.* at 947. The Court further noted that, "it is legitimate during opening statements for . . . defense counsel . . . to verbally describe, in detail, the evidence he intends to prove, including tangible pieces of evidence." *Id.* at 951.

In the instant case, the trial court notes that after opening statements, the trial court "advised defense counsel that he would not be permitted to introduce evidence of the initial DHS report at trial." Trial Ct. Op. at 24-25 (citing N.T. Trial, 3/26/19, at 31). The trial court further explained: "In terms of whether or not [DHS is] investigating [Sharee Brinson] . . . is one, hearsay and two, DHS records normally as to who they're investigating and the source of the complaint is private, so that was an inappropriate reference, all right, so be careful." *Id.* Ultimately, the trial court concluded that the DHS report was irrelevant pursuant to Pa.R.E. 401 because "[t]he subject of . . . DHS's stated initial intention to investigate [Sharee Brinson] had zero bearing on the overarching question of whether Appellant's maltreatment of C.B. and F.B. had satisfied the statutory elements of each conviction." Trial Ct. Op. at 25.

The trial court also rejected Appellant's claim that the court's ruling precluded her from raising a full defense. Specifically, the trial court explained:

> [The trial court's evidentiary ruling] did not prevent Appellant from raising the theory, and introducing testimony evidence that Appellant was not involved with F.B. and C.B. and that [Sharee Brinson] had been caring for and subsequently abusing both girls. [Appellant's] counsel introduced the theory in his opening statement, he inquired about Sharee Brinson's involvement with caring for C.B. and F.B. at every opportunity on cross-examination and presented the same theory again in his closing. While not admitted into evidence, defense counsel presented Officer [Viera] with the DHS report itself and discussed the investigation into [Sharee] Brinson. The jury had a full opportunity to hear the theory and deemed it false against the weight of the Commonwealth's evidence.

- 10 -

*Id.* at 27.

Based on our review of the record, we discern no abuse of discretion by the trial court in sustaining the Commonwealth's objection during Appellant's opening statement concerning the admissibility of the initial DHS report implicating Sharee Brinson. *See Luster*, 234 A.3d at 838. The fact that Sharee Brinson was the initial subject of an earlier DHS report was not relevant to "the overarching question" concerning Appellant's mistreatment of the children. *See* Trial Ct. Op., at 25. Further, Appellant was not precluded from eliciting testimony concerning Sharee Brinson's involvement during cross-examination and again during closing arguments. Therefore, the trial court's evidentiary ruling did not preclude Appellant from presenting a full defense, including the theory that Sharee Brinson was solely responsible for abusing C.B. and F.B. Accordingly, Appellant is not entitled to relief on this issue. *See Saez*, 225 A.3d at 178.

In her next claim, Appellant contends that the trial court erred when it permitted the Commonwealth to present inadmissible hearsay testimony from E.A. Appellant's Brief at 15. Specifically, Appellant refers to E.A.'s testimony that Appellant withheld food from C.B. and F.B. and forced the children to sleep on the floor. *Id.* at 15-16. Appellant argues that this testimony was inadmissible hearsay because it went beyond the scope of the Tender Years notice that was provided to Appellant prior to trial. *Id.* at 16. Appellant further contends that the testimony was also inadmissible under Pa.R.E. 613 because Appellant did not cross-examine C.B. or F.B. Therefore, Appellant

argues that E.A.'s testimony was an improper means of bolstering C.B. and F.B.'s credibility. *Id.*

Before we review the merits of Appellant's issue, we must first determine whether the issue has been properly preserved for appellate review. Rule 103 of the Pennsylvania Rules of Evidence requires a party to, at the time of the ruling admitting evidence, make a timely and specific objection, stating the specific ground for the objection, unless it was apparent from the context of the objection. Pa.R.E. 103(a)(1). Rule 103 does not require a party to renew an objection once the court has ruled on the record, be it before or during trial. Pa.R.E. 103(b); *see also Commonwealth v. Walter*, 119 A.3d 255, 264 (Pa. 2015) (holding that objecting party must make a timely objection stating the specific ground for the objection unless it was apparent from context).

In the instant case, the following exchange occurred during the Commonwealth's direct examination of E.A.:

[The Commonwealth]: What did your daughter tell you?

[Trial counsel]: Objection to hearsay.

[The trial court]: Overruled.

A:    She said that –

Q:    If you need time to remember – would it help to see a copy of your statement?

A:    No. She just said that she was beaten and they wouldn't feed them. They made them sleep on cold floors.

Q:    Who did you understand them to be referring to when she said they?

- 12 -

A:      [Appellant] and her sister.

Q:      And did she say anything else about what [Appellant] did to her?

A:      She said that they hit her with brushes – I guess a hair brush, and then hit them with belts.

Q:      And did you ever have any conversations with [F.B.]?

A:      Yes.

Q:      And what did [F.B.] tell you?

A:      Sort of the same thing and was particularly disturbed about sleeping on the cold floor.

N.T. Trial, 3/27/19, at 13-14.

On appeal, Appellant claims that the Commonwealth elicited testimony that exceeded the scope of the Tender Years' notice. Specifically, Appellant refers to E.A.'s testimony concerning statements from the victims in which they claimed that Appellant withheld food and forced the victims to sleep on the floor. However, although Appellant made a broad objection to hearsay before the testimony was elicited, that objection was denied due to the trial court's pre-trial Tender Years ruling. Moreover, Appellant made no further objection concerning the scope of the testimony. *See id.* Therefore, this issue is waived. *See* Pa.R.E. 103(a)(1); *Walter*, 119 A.3d at 264. Accordingly, Appellant is not entitled to relief.

## Sufficiency of the Evidence

Appellant also challenges the sufficiency of the evidence sustaining her convictions for aggravated assault. Specifically, Appellant contends that the "there was no direct evidence that Appellant caused [or] attempted to cause

bodily injury to either F.B or C.B. [or] that Appellant endangered the welfare of either child." Appellant's Brief at 18-19. In support, Appellant asserts that F.B. "denied that Appellant abused her or caused her any injury," during her testimony at trial. *Id.* at 19. Further, Appellant contends that although C.B. testified that Appellant hit both victims with a hairbrush on more than one occasion, C.B. "previously accused Appellant's sister, [Sharee Brinson], of causing her injuries when she disclosed the abuse at the hospital." *Id.* Appellant also argues that "[d]espite the trial court's erroneous assertion . . . that [F.B. and C.B.] were 'emaciated,' Doctor Henry testified that she observed no signs of malnutrition in either child" and that she could not determine when the injuries occurred because "they appeared to be scars, rather than recent injuries." *Id.* Therefore, Appellant concludes that the evidence did not "establish that either girl sustained their injuries while in Appellant's care[,] nor did the testimony preclude the possibility that the injuries were sustained prior to their mother turning their care over to Appellant and her sister." *Id.*

Our standard of review when presented with a sufficiency of the evidence claim is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be

resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier of fact while passing on the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Bragg*, 133 A.3d 328, 330-31 (Pa. Super. 2016) (citation omitted).

In order to sustain a conviction for aggravated assault of a child less than six years of age, the Commonwealth must prove beyond a reasonable doubt that a defendant over the age of eighteen "attempt[ed] to cause or intentionally, knowingly or recklessly cause[d] bodily injury to a child less than six years of age . . . ." 18 Pa.C.S. § 2702(a)(8).

The Crimes Code defines EWOC as follows: "a person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he [or she] knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1).

In sufficiency of the evidence cases, this Court has crafted a three-prong test to determine whether a defendant is in violation of Section 4304(a)(1) of the Crimes Code:

(1) the accused must be aware of his or her duty to protect the child; (2) the accused must be aware that the child is in circumstances that could threaten the child's physical or

- 15 -

psychological welfare; and (3) the accused either must have failed to act, or must have taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.

***Commonwealth v. Sebolka***, 205 A.3d 329, 337 (Pa. Super. 2019) (citation omitted).

Here, the trial court addressed Appellant's claim as follows:

The record was replete with evidence that Appellant had adopted the role of the girls' temporary caretaker from June 2016 to August 2016, while the girls' mother was serving her term of incarceration. [W.B.] testified that she arranged for Appellant to care for her girls, including that she provided Appellant with the girls' medical and Social Security cards. Both C.B. and F.B. testified that they were living with and were under the care of Appellant. N.B. testified that when he saw his sisters, they were living with Appellant. Appellant herself reached out to [W.B.], to inform her about [an] injury [to] C.B.'s finger, and that it required a trip to the hospital. When [D.B.] and [E.A.] attempted to recover the children, they reached out to Appellant, who promptly began evading the family. Appellant was clearly aware that she had been entrusted with a duty of care for both girls.

The cumulative evidence overwhelmingly established Appellant's duty of care towards C.B. and F.B. The remaining statutory elements similarly were proven. Both victimized children provided convincing trial testimony that Appellant had forced them to sleep on the floor, had refused to feed them, and regularly beat and kicked them. The jury as factfinder evaluated a wealth of testimony to corroborate their testimony. [D.B.] and [E.A.] both testified that they noticed a drastic change in both the appearance and demeanor of both girls; how both C.B. and F.B. looked underweight after their stay with Appellant and that they were now skittish and unhappy.

The jury also evaluated the expert opinion of Dr. Kate Henry, who had described in detail the extent of C.B. and F.B.'s physical injuries. She described how both girls had needed a CAT scan for a swollen stomach, as doctors were concerned that they had ruptured spleens and their weeklong medical treatment in the hospital. She detailed that both little girls had been covered in

bug bites and had similarly patterned bruises and scars on their legs and thighs. She thoroughly opined that those injuries could not have occurred in a vacuum and were unmistakable indicators of abuse. Th[e] jury was left with no reasonable doubt that starvation and repeated beating of these two very young children to the extent that they need[ed] emergency medical treatment, placing them in the hospital for a week, had constituted a course of conduct by their caregiver that had harmed both their physical and psychological welfare.

* * *

It is uncontested that the children were less than six years of age and had suffered bodily injuries in the form of bruises, scars, and malnutrition. Furthermore, the record is rife with convincing evidence that Appellant had intentionally caused these injuries. Both children reported credibly . . . that Appellant had struck them with belts and other objects, had forced them to sleep on the floor, [which culminated] in a weeklong hospital stay. [D.B.] and [E.A. became] alarmed upon observing that both girls had considerable weight loss and had appeared to be psychologically scarred after their stay with Appellant. Dr. Henry, the Commonwealth's expert, who examined F.B. and C.B., had provided clear opinion and factual testimony that the girls' injuries had been intentionally [caused] and that their injuries had not resulted from any accident. The cumulative evidence proved well beyond a reasonable doubt that Appellant's abhorrent conduct had been the rooted cause of both children's injuries. The jury correctly concluded that Appellant had intentionally caused the harm.

Trial Ct. Op. at 29-31 (formatting altered).

Based on our review of the record, in viewing the evidence in the light most favorable to the Commonwealth, we conclude that there was sufficient evidence establishing Appellant's guilt for both EWOC and aggravated assault. *See Bragg*, 133 A.3d at 330-31. As noted by the trial court, the Commonwealth presented evidence establishing that repeatedly hit C.B. and F.B. with brushes and belts, and by doing so caused injury and threatened both children's physical and psychological welfare. *See* 18 Pa.C.S. §

- 17 -

2702(a)(8); **Sebolka**, 205 A.3d at 337. Although Appellant maintains that her sister, Sharee Brinson, was responsible for the children's injuries, we will not re-weigh the evidence the evidence and substitute or judgment for the fact-finder.[5] **See Bragg**, 133 A.3d at 330. Accordingly, we conclude that Appellant is not entitled to relief on this claim.

**Weight of the Evidence**

Appellant next argues that the jury's verdict was against the weight of the evidence. Appellant's Brief at 20. Specifically, Appellant reiterates that although C.B. accused Appellant of abuse at trial, C.B. had previously identified Sharee Brinson as the perpetrator when she was first interviewed at the hospital. **Id.** at 21. Appellant also notes that F.B. denied that Appellant had abused her at trial. **Id.** Therefore, Appellant concludes that "the evidence that should have been given the most weight were C.B.'s statements at the hospital, which was closer in time to the abuse she endured," and were not influenced by "other people's suggestiveness." **Id.**

When reviewing a challenge to the weight of the evidence, we are governed by the following standard:

> When reviewing a challenge to the weight of the evidence, we review the trial court's exercise of discretion. A reversal of a verdict is not necessary unless it is so contrary to the evidence as to shock one's sense of justice. The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none

---

[5] To the extent Appellant asks this Court to focus on inconsistencies in the victims' testimonies, we reiterate that any question of credibility is within the exclusive province of the factfinder, and this Court will not disturb the factfinder's credibility determination. **Bragg**, 133 A.3d at 331.

or some of the evidence and to determine the credibility of the witnesses. The fact-finder also has the responsibility of resolving contradictory testimony and questions of credibility. We give great deference to the trial court's decision regarding a weight of the evidence claim because it had the opportunity to hear and see the evidence presented.

*Commonwealth v. Roane*, 204 A.3d 998, 1001 (Pa. Super. 2019) (citations omitted and formatting altered).

Here, the trial court addressed Appellant's claim as follows:

The cumulative evidence that had been presented by the Commonwealth of Pennsylvania was credible, convincing, and compelling. Neither the conviction for the aggravated assault on C.B. nor any of the other verdicts shocked anyone's sense of fairness or justice. The record is replete with testimonial evidence that thoroughly disproved Appellant's defense theory and repeated attempts to pass fault onto her sister. As stated, both children presented credible testimony identifying Appellant as the source of their injuries. . . . Testimony further corroborated by [E.A.] and [D.B.'s] observations of the girls' appearance, [D.B.] and N.B. confirming both girls were indeed in Appellant's care, and expert testimony by Dr. Henry affirming that their injuries were caused intentionally and indicated abuse. The cumulative evidence of guilt was overpowering. Thus, the evidence sufficiently established all charges of which Appellant was found guilty and that no trial court error had been committed because none of the jury's verdicts had been entered against the weight of the evidence. Since no error has been committed, no remedy is warranted.

Trial Ct. Op. at 34 (formatting altered).

Based on our review of the record, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim. *See Roane*, 204 A.3d at 1001. Although Appellant claims that C.B.'s statements at the hospital were "more reliable," we will not reweigh or disturb the trial court's credibility

- 19 -

determinations on appeal. *See id.* Accordingly, Appellant is not entitled to relief on this claim.

**Discretionary Aspects of Sentence**

In her final issue, Appellant raises a challenge to the discretionary aspects of her sentence. Appellant's Brief at 21. Specifically, Appellant argues that the trial court failed to consider sentencing factors such as the protection of the public or Appellant's rehabilitative needs. *Id.* at 23-24. Appellant also argues that the trial court "focused solely on the seriousness of the offenses and the impact of the victim to the exclusion of all mitigating factors" and did not give any consideration to the mitigating factors contained in the PSI report. *Id.* Additionally, Appellant contends that the trial court failed to state sufficient reasons for imposing Appellant's sentence or provide an adequate justification for deviating from the sentencing guidelines when it imposed a sentence in excess of the aggravated range. *Id.* at 23.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved [her] issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." *Commonwealth v. Battles*, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." *Commonwealth v. Grays*, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

Here, the record reflects that Appellant preserved her sentencing claim in a post-sentence motion, filed a timely notice of appeal, and included the issue in her Rule 1925(b) statement. Appellant has also included a Rule 2119(f) statement in her brief. Further, we conclude that Appellant has raised a substantial question for review. *See Commonwealth v. Goggins*, 748 A.2d 721, 728 (Pa. Super. 2000) (*en banc*) (claim that trial court double-

counted factors already taken into account in sentencing guidelines constitutes a substantial question); ***Commonwealth v. Mulkin***, 228 A.3d 913, 916 (Pa. Super. 2020) (claim that court imposed aggravated-range sentence without considering mitigating factors is a substantial question); ***Commonwealth v. Proctor***, 156 A.3d 261, 273 (Pa. Super. 2017) (substantial question raised where the appellant argues that sentencing court failed to set forth adequate reasons for sentence imposed).

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

Additionally, our review of the discretionary aspects of a sentence is confined by the statutory mandates of 42 Pa.C.S. §§ 9781(c) and (d). Subsection 9781(c) provides:

The appellate court shall vacate the sentence and remand the case to the sentencing court with instructions if it finds:

(1) the sentencing court purported to sentencing within the sentencing guidelines but applied the guidelines erroneously;

(2) the sentencing court sentenced within the sentencing guidelines but the case involves circumstances where the application of the guidelines would be clearly unreasonable; or

(3) the sentencing court sentenced outside the sentencing guidelines and the sentence is unreasonable.

In all other cases the appellate court shall affirm the sentence imposed by the sentencing court.

- 22 -

42 Pa.C.S. § 9781(c).

In reviewing the record, we consider:

(1) The nature and circumstances of the offense and the history and characteristics of the defendant.

(2) The opportunity of the sentencing court to observe the defendant, including any presentence investigation.

(3) The findings upon which the sentence was based.

(4) The guidelines promulgated by the commission.

42 Pa.C.S. § 9781(d).

*Commonwealth v. Raven*, 97 A.3d 1244, 1253-54 (Pa. Super. 2014) (some citations omitted and some formatting altered).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public, [the] gravity of offense in relation to impact on victim and community, and [the] rehabilitative needs of the defendant." *Commonwealth v. Fullin*, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered). Additionally, the trial court "must consider the sentencing guidelines." *Id.* at 848 (citation omitted). Where a PSI report exists, this Court will "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." *Commonwealth v. Watson*, 228 A.3d 928, 936 (Pa. Super. 2020) (citation omitted).

Additionally, this Court has explained that

the sentencing court is required to consider the sentence ranges set forth in the sentencing guidelines, but it [is] not bound by the

sentencing guidelines. The court may deviate from the recommended guidelines; they are "merely one factor among many that the court must consider in imposing a sentence." A court may depart from the guidelines "if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community." When a court chooses to depart from the guidelines[,] however, it must "demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines." Further, the court must "provide a contemporaneous written statement of the reason or reasons for the deviation from the guidelines." 42 Pa.C.S. § 9721(b).

*Commonwealth v. Sheller*, 961 A.2d 187, 190 (Pa. Super. 2008) (some citations omitted and formatting altered). "The requirement that the court provide a contemporaneous written statement is satisfied when the judge states his [or her] reasons for the sentence on the record and in the defendant's presence." *Commonwealth v. Durazo*, 210 A.3d 316, 321 (Pa. Super. 2019) (citations and quotation marks omitted).

"When reviewing a sentence outside of the guidelines, the essential question is whether the sentence imposed was [un]reasonable." *Id.* (citations omitted). "A sentence may be found unreasonable if it fails to properly account for" the four statutory factors of Section 9781(d). *Sheller*, 961 A.2d at 191. "Even if the sentencing court relied on factors that were subsumed into the guideline recommendation, . . . there is no abuse of discretion when the sentencing court has significant other support for its departure from the sentencing guidelines." *Id.* at 192 (citations omitted). Finally, we note that a sentencing court is not required to ignore context and impose a sentence in a vacuum, where the offense at issue and the corresponding sentencing

guidelines are the only factors permissibly considered by a sentencing court. *Commonwealth v. Hardy*, 939 A.2d 974, 980 (Pa. Super. 2007) (citation omitted).

Here, the record reflects that the trial court ordered a PSI report, which it reviewed prior to sentencing. N.T. Sentencing Hr'g, 7/9/19, at 6. At the sentencing hearing, the trial court also noted that it had reviewed "extensive" reports from DHS, a mental health assessment, and the sentencing guidelines applicable to each conviction. *Id.* at 6, 25.

The trial court further noted the following:

The road to rehabilitation, [Appellant], beings with acceptance of responsibility for one's actions and indeed remorse for one's actions. I have seen zero from you. Not only that, within the DHS reports and assessments, the multiple comments, particularly yours to this day, you still deny that you even had care of these children, which really, really, given all that has occurred, is most shocking.

You have a right to a trial, absolutely. You're not being penalized for a trial, but as I told you before the mitigating circumstance of acceptance of responsibility is not present here. More importantly, when I evaluate what to do here, I evaluate the person that is before me. I evaluate the net effect of what that person did. I understand that to a degree you had to have been overwhelmed, which, you know, identifies one of the issues here, but you went out of your way to take out your anger on two lovely little children who did absolutely nothing to deserve your wrath.

And I am struck by the fact that when the efforts of [W.B.'s] family members, particularly their Aunt [D.B.], after being — trying to locate these children, you actively hid them along with members of your family. There was no reason to do that except to cover up what you were doing. That, to me, indicates a particular mindset that is most disturbing. The net effect upon those two lovely little girls is life-lasting. You didn't just keep them in an unkempt situation, their conditions were horrific. You wouldn't

- 25 -

put any animal or any human being in those conditions. And you repeatedly beat them.

* * *

So I looked at the all the circumstances here from beginning to end. And, quite frankly, that was why, to this day, I still have a great concern for your children, because I do agree with your counsel that some of the methods of how we deal with anger are learned behavior. . . .

This situation occurred because [W.B.] chose you instead of her family members to take care of her two girls. And the machinations that that family had to go through to get them back before something worse happened should never have occurred. I blame you for that. That was intentional. So for you at this point in time to continually say I, I, I, I, I, indicates to me you are nowhere near having any understanding or comprehension of what you did wrong, or care of others aside from yourself. That is most disturbing.

Because I would think that someone in your position before [the trial court] at this point in time would have reflected otherwise. So I do agree with your counsel that you do need direction, but for every action there is a reaction. For every form of behavior, there's a consequence. And I don't agree that we should lower the bar of expected behavior based upon our upbringing. Because if we were to lower behavior to suit bad behavior, the only thing that happens is it's lowered behavior and less care. You had a responsibility to those children. If you couldn't deal with the responsibility, all you had to do was give them back before something bad happened instead of taking out your rage on them. I do not wish to take any mom from a child. Sometimes it's needed. This is one of them.

*Id.* at 21-25.

In its Rule 1925(a) opinion, the trial court explained:

[Appellant] has made no demonstration that [the trial court] abused its discretion when imposing the respective sentences. As the record reflected cogent sentencing factors and rationales [sic] reasons had been recited. [The trial court] considered the aggravating and mitigating circumstances after [it] acknowledged full review of the prepared investigatory reports and mental health

- 26 -

assessments. The gravity of the offense and the ongoing impact Appellant's actions had on the children and their family and the recommended Sentencing Guidelines that had been applicable had been reviewed and incorporated. Additional conditions ordered by [the trial court] included that Appellant receive continual anger management classes, and parenting classes, to help ensure her ability to reemerge as a productive member of society. [The trial court] weighed all relevant factors required and determined a sentence that fell far beneath the statutory maximum.

Trial Ct. Op. at 38.

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253-54. The record reflects that the trial court considered the PSI report, the appropriate sentencing factors, and the mitigating evidence presented at the sentencing hearing. *See Fullin*, 892 A.2d at 849-50; *see also Watson*, 228 A.3d at 936 (stating that, where a PSI report exists, this Court will "presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors" (citation omitted)). Additionally, we note that the record reflects that the trial court demonstrated that it was aware of Appellant's sentencing guidelines, having explicitly referenced the mitigated, standard, and aggravated range sentence for each of Appellant's offenses. *See* N.T. Sentencing Hr'g at 25. Ultimately, the trial court explained that an aggregate sentence of three to eleven years' incarceration was necessary in light of the circumstances of this case and the ongoing impact that Appellant's actions had on the minor victims. *See*

*Durazo*, 210 A.3d at 321; *Sheller*, 961 A.2d at 190.[6]   Under these circumstances, because the trial court's findings are supported by the record, we have no basis to conclude that the trial court's sentences or application of the guidelines was unreasonable.  *See Raven*, 97 A.3d at 1253-54.  For these reasons, Appellant is not entitled to relief.  Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/24/2023

---

[6] Appellant's sentencing guidelines reflect that the sentence imposed for the aggravated assault charges was in excess of the aggravated range.  *See Commonwealth v. Beatty*, 227 A.3d 1277, 1288 (Pa. Super. 2020) (explaining that "[w]hen deviating from the sentencing guidelines, a trial judge must indicate that he [or she] understands the suggested ranges" (citations omitted)).